NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0008n.06

Nos. 11-4003/11-4004

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jan 03, 2013*
DEBORAH S. HUNT, Clerk

S.L., a minor, by and through his guardian and next friend K.L., et al, )
)
)
Plaintiffs/Appellees, )
)
v. )
)
PIERCE TOWNSHIP BOARD OF TRUSTEES, et al., )
)
Defendants/Appellants. )
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

Before: MOORE, GILMAN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. S.L., a teenager, filed this § 1983 action against several defendants after he was arrested for aggravated arson and held in a juvenile detention center. Defendants David Homer, the police officer who arrested S.L., and Thomas DelGrande, the Superintendent of the Clermont County Juvenile Detention Center, appeal the district court's denial of their summary-judgment motions, in which they sought qualified immunity. We dismiss Homer's appeal for lack of jurisdiction and affirm the denial of DelGrande's summary judgment motion.

I.

On December 3, 2006, S.L.'s mother, Gayle Schneider, found some burnt popsicle sticks in S.L.'s bedroom. Schneider confronted S.L. and the ensuing argument led her to call 911. Homer and his supervisor, Lieutenant Marvin Saylor, responded to the call.

Homer questioned S.L. alone in S.L's room. It is undisputed that S.L. then admitted that he had set some popsicle sticks on fire. But Homer and S.L. now disagree about what happened next. According to Homer, S.L. said that he had left the sticks in his room while they were smoldering. Homer asked S.L. whether he thought the smoldering sticks would start a fire. S.L. replied, "I really don't care. I don't want to be here." Homer left S.L. to confer with Lieutenant Saylor, after which Homer arrested S.L. for arson. According to S.L., however, he did not say that he left sticks smoldering in his room. Rather, he extinguished the fire and placed the sticks on a cardboard box. S.L. also says that Homer arrested him without speaking to Saylor.

The rest of the story is undisputed. Homer booked S.L. at the Clermont County Juvenile Detention Center for aggravated arson, a first-degree felony. There, Shawn Bartley, the intake clerk for the night, prepared a risk-assessment sheet and a report recommending S.L.'s detention.

The next day, S.L. appeared before Juvenile Court Judge Stephanie Wyler for a detention hearing. She determined that S.L. should remain confined pending a psychological evaluation. Judge Wyler also appointed a guardian *ad litem* and scheduled S.L.'s pretrial conference. Before the pretrial conference, S.L.'s guardian *ad litem* filed a motion for release. At the hearing on the motion, the prosecutor acknowledged the lack of evidence of aggravated arson and amended S.L.'s charge to unruliness. Judge Wyler ordered S.L.'s release and later dismissed the unruliness charge.

S.L. thereafter filed this 42 U.S.C. § 1983 action, alleging that Homer arrested S.L. without probable cause and that DelGrande negligently supervised the admissions process at the detention center. Homer and DelGrande moved for summary judgment on qualified-immunity grounds, which the district court denied. This interlocutory appeal followed.

II.

We review de novo the district court's denial of qualified immunity. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012). In doing so, "[w]e take the district court's view of the facts in the light most favorable to [S.L]." *Hayden v. Green*, 640 F.3d 150, 152–53 (6th Cir. 2011).

Homer first argues that collateral estoppel bars S.L.'s wrongful-arrest claim because Judge Wyler had already determined that Homer had probable cause to arrest S.L. Under Ohio law, which applies here, if the parties to the current action already litigated an issue to a decision in a prior action, they must live with the decision. *See Daubenmire v. City of Columbus*, 507 F.3d 383, 389 (6th Cir. 2007) (quoting *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994)).

But here, the premise of Homer's argument is wrong. Judge Wyler never testified in her deposition that she had made a probable-cause determination at S.L.'s detention hearing. (Instead, she implied the opposite.) Homer says that collateral estoppel applies nonetheless, citing Judge Wyler's affidavit that, at the detention hearing, she "was satisfied that there was probable cause to believe that [S.L.] may have committed the offense." But whether Judge Wyler was "satisfied" as to probable cause is beside the point. What matters for our purposes is whether she made a formal probable-cause determination at the detention hearing; and she did not. So there is no prior decision as to probable cause to bind the parties here.

Homer next argues that he was entitled to qualified immunity because he, in fact, had probable cause to arrest S.L. An arresting officer has probable cause if, based on facts known at the time of arrest, he reasonably believes that the defendant had committed a crime. *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). Here, Homer arrested S.L. for aggravated arson. To have

probable cause to arrest S.L. for that, therefore, Homer needed grounds reasonably to believe that, by setting the popsicle sticks on fire, S.L. knew he had created a substantial risk of harm by fire to the home or to the people inside. *See* O.R.C. § 2909.02(A).

Homer says he has such grounds because S.L. said that he left the sticks smoldering in the bedroom and did not care whether the house caught on fire. But S.L. disputes that he left the sticks smoldering and, even if we were to interpret S.L.'s ambiguous testimony as conceding that he did not care whether the house caught on fire, such a statement is largely immaterial to determining whether S.L.'s conduct created the "substantial risk" that Ohio's aggravated-arson statute requires. Homer also says he obtained more information from Saylor before arresting S.L. But S.L. disputes that Homer conferred with Saylor. And the only relevant undisputed fact—that S.L. set popsicle sticks on fire in his room—does not support a probable-cause finding. Ohio defines "substantial risk" as "a strong possibility . . . that a certain result may occur." O.R.C. § 2901.01(A)(8). The statute therefore requires more than an open flame inside a structure. Otherwise criminal violations would include lighting a candle, cigarette, or stove-top burner inside a home. *Cf. State v. Wolf*, 891 N.E. 2d 358, 362–63 (Ohio Ct. App. 2008) (overturning a conviction for aggravated arson because of insufficient evidence).

Homer's appeal is based upon disputed issues of fact. We therefore dismiss his appeal for lack of jurisdiction. *See Berryman v. Rieger*, 150 F.3d 561, 563–64 (6th Cir. 1998).

### III.

S.L. also asserts a state-law negligent-supervision claim against DelGrande, the superintendent of the detention center. According to S.L., DelGrande failed to train Shawn Bartley

about the legal requirements for the intake process at the center. And Bartley, in turn, made a mistake that allegedly resulted in S.L.'s detention. Specifically, Bartley failed to give Homer an oath before Bartley accepted Homer's complaint, as required under Ohio Rule of Juvenile Procedure 10(B)(3). DelGrande argues here, as he did in the district court, that he is entitled to immunity from this claim under Ohio law. We review the district court's denial of Ohio state-law immunity de novo. *Sabo v. City of Mentor*, 657 F.3d 332, 336–37 (6th Cir. 2011).

Ohio law provides two types of qualified immunity: public immunity and individual immunity. *See* O.R.C. 2744.03; *Lambert v. Clancy*, 927 N.E.2d 585, 587 (Ohio 2010). DelGrande did not seek public immunity in the district court, so we consider only his argument for individual immunity here. *See Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 269–70 (6th Cir. 2010).

Ohio law presumes individual immunity for public employees in civil actions, subject to three exceptions: (1) where the employee acted outside the scope of employment, (2) where the employee acted with "malicious purpose, in bad faith, or in a wanton or reckless manner," and (3) where a statute imposes liability. O.R.C. 2744.03(A)(6). Here, the district court determined that the second exception applied because a jury could find that DelGrande acted in a wanton or reckless manner. Thus, the court denied immunity.

DelGrande first says that the "wanton or reckless" exception categorically cannot apply to negligent-supervision claims because those claims require only a finding of negligence. But S.L. can prove his negligence claim by a showing of wanton or reckless conduct. And the district court properly concluded that the evidence in the record is sufficient to create a jury question concerning whether S.L. has made that showing here. So DelGrande's first argument is without merit.

DelGrande also argues that he did not, in fact, act wantonly or recklessly. Wanton misconduct is "the failure to exercise any care whatsoever." *Fabrey v. McDonald Vill. Police Dept.*, 639 N.E.2d 31, 35 (Ohio 1994). Recklessness is a "perverse disregard of a known risk." *O'Toole v. Denihan*, 889 N.E.2d 505, 516–17 (Ohio 2008).

DelGrande admits that, as superintendent, he is responsible for training employees about the legal requirements for detaining juveniles. And Bartley testified that he was never trained to administer an oath before accepting complaints, as required under Ohio law. A jury could therefore find that, by failing to train Bartley about a specific detention requirement, DelGrande exercised no care with regard to supervising his staff or disregarded the risk of illegally detaining juveniles. *Cf. DiGorgio v. Cleveland*, 2011 WL 5517366, at *7 (Ohio Ct. App. Nov. 10, 2012). Thus, DelGrande is not entitled to individual immunity under Ohio law.

We therefore dismiss Officer Homer's appeal for lack of jurisdiction and affirm the district court's order denying qualified immunity for DelGrande.