[Cite as *Moss v. Lorain Cty. Bd. of Mental Retardation*, 2016-Ohio-169.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

JACOB MOSS, et al.

    Appellees

    v.

LORAIN COUNTY BOARD OF MENTAL
RETARDATION, et al.

    Appellants

C.A. No.     15CA010767

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    08CV157287

DECISION AND JOURNAL ENTRY

Dated: January 19, 2016

HENSAL, Presiding Judge.

{¶1} The Lorain County Board of Mental Retardation and Developmental Disabilities appeals an order of the Lorain County Court of Common Pleas that denied its motion for summary judgment. For the following reasons, this Court reverses.

I.

{¶2} It was supposed to be a typical school day for seven-year-old Jacob Moss, but ended in a trip to the hospital. The previous spring, his mother and the Elyria School District had developed an Individualized Education Program (IEP) to address his special needs. According to the IEP, Jacob would attend a school run by the Board where he could receive more individualized instruction. The school district would also provide him with a personal aide. The school district and Jacob's mother also developed a behavior support plan to try to reduce behaviors Jacob was exhibiting in school, which included running from staff members.

**{¶3}** When school resumed in August, Jacob had a new teacher, Renee Oppenheimer, and a new aide, Andrea Hamilton. Ms. Oppenheimer had taught in a special needs classroom for many years, but Ms. Hamilton had only been an aide for a short time and never for someone with as many behaviors as Jacob. Ms. Hamilton also did not receive a copy of Jacob's IEP or behavior plan before starting to work with him. Although Ms. Oppenheimer told Ms. Hamilton to stay with Jacob at all times, she found it challenging and, at one point, Jacob yanked another child's hair. Following that incident, Ms. Oppenheimer repeated to Ms. Hamilton that she had to stay in very close contact with Jacob.

**{¶4}** The next day at school, Ms. Oppenheimer had her students sit around two curved tables that had been placed close to each other to form a semi-circle. Ms. Hamilton sat directly behind Jacob. According to Ms. Hamilton, when it was Jacob's turn to participate at the board, she accompanied him. As they were returning to their seats, however, Jacob suddenly pivoted around her and began running toward the kitchen area of the classroom, which was separated from the rest of the classroom by an island. Ms. Hamilton caught up to Jacob as he reached the counter and took his hand to return him to his seat. Jacob, however, pulled his hand free and grabbed the handle of a full pot of coffee that was in a coffeemaker that was on the counter. Ms. Oppenheimer had used the coffeemaker for many years to make coffee available to the adults in the classroom. Ms. Hamilton grabbed the top of the pot to try to keep Jacob from moving it, but he struggled it loose, spilling scalding hot coffee on the countertop, which flowed off of it on to his chest. As Jacob began screaming, other aides rushed over to take his shirt off and begin administering medical attention. An ambulance took him to the hospital, where he was diagnosed with second-degree burns to his chest and abdomen.

{¶5} Jacob's mother filed a personal injury action on behalf of herself and Jacob against the Board, the school district, and the staff members who were in the classroom at the time of the incident. The Board twice sought judgment on the pleadings, but this Court upheld the trial court's denial of their motions. *Moss v. Lorain Cty. Bd. of Mental Retardation*, 185 Ohio App.3d 395, 2009-Ohio-6931, ¶ 33; *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 13CA010335, 2014-Ohio-969, ¶ 16. Following the second appeal, the Board moved for summary judgment, arguing that it is immune from liability under Revised Code Chapter 2744. The trial court denied its motion. The Board has appealed, assigning as error that the court incorrectly denied it the benefit of statutory immunity.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DENYING DEFENDANTS-APPELLANTS LORAIN COUNTY BOARD OF MENTAL RETARDATION AND LORAIN COUNTY BOARD OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES THE BENEFITS OF STATUTORY IMMUNITY UNDER R.C. CHAPTER 2744.

{¶6} The Board argues that the trial court should have granted it summary judgment because it is immune from liability under Chapter 2744. Under Civil Rule 56(C), summary judgment is appropriate if:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party

"must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E). We review a summary judgment order de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶7} "Determining whether a political subdivision is immune from liability under [Chapter 2744] * * * involves a three-tiered analysis." *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 8. "The starting point is the general rule that political subdivisions are immune from tort liability[.]" *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 2002-Ohio-222, ¶ 14 (9th Dist.). Under Section 2744.02(A)(1), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function." "At the second tier, this comprehensive immunity can be abrogated pursuant to any of the five exceptions set forth at R.C. 2744.02(B)." *Shalkhauser* at ¶ 16. "Finally, immunity lost to one of the R.C. 2744.02(B) exceptions may be reinstated if the political subdivision can establish one of the statutory defenses to liability" contained in Section 2744.03(A). *Id.*

{¶8} It is not disputed in this case that the Board is a political subdivision. The burden on summary judgment, therefore, shifts to the Mosses to raise a genuine issue of material fact as to whether their claims fall within one of the exceptions to immunity set forth in Section 2744.02(B). *Wolford v. Sanchez*, 9th Dist. Lorain No. 05CA008674, 2005-Ohio-6992, ¶ 31. The Mosses argue that, in light of this Court's prior decisions, the fact that an exception exists is the law of the case. They note that in the first appeal, this Court held that "Moss has alleged sufficient facts that if proven, demonstrate that the R.C. 2744.02(B)(4) exception applies to the instant matter." *Moss*, 2009-Ohio-6931 at ¶ 16. In the second appeal, this Court wrote that

"[t]he Board is not immune from suit with regard to the Mosses' complaint." *Moss*, 2014-Ohio-969 at ¶ 14.

{¶9} The doctrine of law of the case "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). Upon review of the record, we note that this Court's prior decisions involved appeals from the Board's motions for judgment on the pleadings. As we explained in the first appeal, when we review such motions, we must "confine our review to the pleadings, accept[ ] all factual allegations in the complaint as true, and mak[e] all reasonable inferences in favor of the nonmoving party." *Moss*, 2009-Ohio-6931 at ¶ 8. Inasmuch as this appeal involves the review of a motion for summary judgment, it involves a different legal question, which precludes the application of the doctrine of law of the case. *See Creauro v. Duko*, 7th Dist. Columbiana No. 04 CO 1, 2005-Ohio-1342, ¶ 27 (explaining that the doctrine of law of the case did not apply because the review of a motion under Civil Rule 12 "is very different than the one employed when ruling on a motion for summary judgment.").

{¶10} The Mosses also argue that there is a genuine issue of material fact with respect to whether the exception under Section 2744.02(B)(4) applies. Section 2744.02(B)(4) provides, in relevant part, that "political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *." According to the Mosses, because Jacob's injuries were caused by the negligence of the Board's employees and were the result of the dangerous conditions in his school classroom, the Section 2744.02(B)(4) exception applies.

{¶11} We will begin by considering whether Jacob's injuries were "due to physical defects within or on the grounds of" his school. This Court has noted that, because the term "physical defect," is not defined in Chapter 2744, "courts have applied the common meaning of the phrase." *Hawsman v. Cuyahoga Falls*, 9th Dist. Summit No. 27221, 2014-Ohio-4325, ¶ 23. Considering the definitions of the words "physical" and "defect" together, we have explained that "it would seem * * * that a 'physical defect' is an imperfection that possesses some materiality that diminishes the worth or utility of the object at issue." *Id.*, citing *Hamrick v. Bryan City School Dist.*, 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, ¶ 28 and *R.K. v. Little Miami Golf Ctr.*, 1st Dist. Hamilton No. C-130087, 2013-Ohio-4939, ¶ 16.

{¶12} The Mosses argue that leaving an easily accessible pot of hot coffee unprotected on a countertop in the kitchen area of the classroom is a physical defect because it goes to the negligent design and maintenance of the kitchen area. According to the Mosses, the Board should have taken measures to prevent the classroom's special needs students from dislodging the coffee pot, such as closing off the kitchen area when the students were working in a different part of the classroom.

{¶13} Although the Mosses' allegations that the kitchen was defectively designed, maintained, and constructed were sufficient to survive a motion for judgment on the pleadings, to survive a motion for summary judgment they were required to point to "specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). They did not present any evidence, however, that it is inherently dangerous to have a coffee pot in a special needs classroom, that the kitchen area of the classroom was improperly designed, or that the kitchen area of a classroom should be closed off when instruction is occurring elsewhere in the room. *See Simmons v. Yingling*, 12th Dist. Warren No. CA2010-11-117, 2011-Ohio-4041, ¶ 29-30

(concluding that report that did not cite to specific industry standards and allegations that floor lacked the necessary traction did not create an issue of fact as to whether there was a physical defect). There is also no evidence that anything in the kitchen did not perform as intended. *See Hamrick*, 2011-Ohio-2572 at ¶ 29 (concluding that there was no evidence that the service pit that worker fell into had not performed as intended). *But cf. Jones v. Delaware City School Dist. Bd. of Edn.*, 5th Dist. Delaware No. 2013 CAE 01 0009, 2013-Ohio-3907, ¶ 26 (concluding that physical defect may have existed if school previously maintained lighting and reflective tape to mark the edge of orchestra pit but removed those protections before student fell into it).

**{¶14}** Upon review of the record, we cannot say that there is a genuine issue of material fact whether Jacob's injuries were "due to" a "physical defect" in the classroom. R.C. 2744.02(B)(4). There is nothing in the record to suggest that anything in the kitchen "did not perform as intended or was less useful than designed." *Hamrick*, 2011-Ohio-2572 at ¶ 29.

**{¶15}** In light of our determination that the Mosses failed to demonstrate that Jacob's injuries were due to a physical defect, it is not necessary to address whether they were caused by the negligence of the Board's employees or whether the Board can establish that one of the defenses contained in Section 2744.03 applies. The Board's assignment of error is sustained.

III.

**{¶16}** The trial court incorrectly concluded that the Board is not immune from liability for Jacob's injuries under Chapter 2744. It, therefore, incorrectly denied the Board's motion for summary judgment. The judgment of the Lorain County Court of Common Pleas is reversed.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____
JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
CONCURS.

MOORE, J.
DISSENTING.

{¶17} Because I believe that, when construing the evidence in the light most favorable to the Mosses, triable issues exist as to the Board's immunity, I respectfully dissent.

{¶18} The majority concludes that the Mosses failed to point to specific facts showing a genuine issue for trial with respect to whether there existed a physical defect that caused the harm. However, the undisputed purpose of the kitchen in the classroom was for instruction of children with disabilities. The Mosses pointed to several record facts that, when construed in

their favor, indicate that the functionality, use, and location of the coffee pot in the instructional kitchen constituted a defective kitchen. They cited Ms. Oppenheimer's deposition wherein she averred that the hot water in the building had been temperature controlled so as to prevent the students from accidental burns and scalding, and wherein she maintained that the knobs on the stove in the kitchen had been removed. Further, they pointed to Ms. Hamilton's deposition, wherein she maintained that the coffee pot was on a waist-high counter, approximately five inches from the counter's edge, and was within reach of the young students.

{¶19} Therefore, I believe that the Mosses met their reciprocal summary judgment burden of establishing a triable issue as to whether the kitchen performed as intended when it contained a fully functioning and personally-utilized coffee pot where it could be accessed by the students in the classroom kitchen, particularly where other measures had been taken to control the temperature of liquids to which the students had access.

{¶20} I would therefore proceed to discuss the remaining issues surrounding immunity, and I would conclude that there remain triable issues as to the remaining matters as well. Accordingly, I would affirm the decision of the trial court.

APPEARANCES:

MATTHEW JOHN MARKLING, PATRICK VROBEL, and SEAN KORAN, Attorneys at Law, for Appellants.

FRANK GALLUCCI, III and MICHAEL SHROGE, Attorneys at Law, for Appellees.